## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MTE HOLDINGS LLC, et al., | ) | Case No. 19-12269 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| _____ | ) | |
| | ) | |
| ALAMO PRESSURE PUMPING, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 20-50592 (CSS) |
| | ) | |
| MDC ENERGY LLC, | ) | |
| MDC TEXAS OPERATOR LLC, | ) | |
| MDC REEVES ENERGY LLC, and | ) | |
| NATIXIS, NEW YORK BRANCH, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## AMENDED COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT
## TO DETERMINE VALIDITY, PRIORITY, AND EXTENT
## OF MINERAL LIENS ON THE DEBTORS' PROPERTY

Alamo Pressure Pumping, LLC ("Alamo"), by and through its undersigned counsel, hereby files this *Amended Complaint and Request for Declaratory Judgment to Determine Validity, Priority, and Extent of Mineral Liens on the Debtors' Property* pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Rules"), the *Sixth Interim Order Under Bankruptcy Code Sections 105(a), 361, 362, 363, 503, and 507, Bankruptcy Rules 4001 and 9014 (I) Authorizing Debtors to Use Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying Automatic Stay; and (IV) Granting Related Relief* [D.I. 674], and *Order Establishing Procedures to Determine the Validity, Priority, and Extent of*

*Liens Asserted by Statutory Lien Claimants* [D.I. 1150] to determine the validity, priority, and extent of its statutory mineral liens under applicable state law on certain of the Debtors'[1] properties, and respectfully shows as follows:

## Parties

1.      Plaintiff Alamo Pressure Pumping, LLC ("Alamo") is a Texas limited liability company with its principal place of business located in Stanton, Texas.

2.      Defendant MDC Energy LLC ("MDC Energy ") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

3.      Defendant MDC Texas Operator LLC ("MDC Texas Operator") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

4.      Defendant MDC Reeves Energy LLC ("MDC Reeves") is a limited liabilitycompany organized under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana.

5.      Defendant Natixis, New York Branch ("Natixis") is the administrative agent acting on behalf of certain lenders and other parties (collectively, the "Lenders" and, together with Natixis, the "Prepetition Secured Parties") in connection with a $60 million credit facility under that certain Credit Agreement dated as of September 17, 2018, (the "Credit Agreement") with Defendant Debtors, as defined herein.

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: MTE Holdings LLC (7894); MTE Partners LLC (1158); Olam Energy Resources I LLC (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240.

**Jurisdiction and Venue**

6.      Defendants MDC Energy, MDC Texas Operator, and MDC Reeves (collectively, the "Debtor Defendants") are debtors in the above-captioned jointly administered chapter 11 cases styled *In re MTE Holdings LLC*, Case No. 19-12269 (CSS) (Bankr. D. Del.) (the "Cases"), pending in the United States Bankruptcy Court for the District of Delaware (the "Court").

7.      This Court has jurisdiction over the Cases and this Complaint pursuant to 28 U.S.C. §§ 157(a), and 1334(a), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Jurisdiction to grant declaratory relief exists pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105, and Fed. R. Bankr. P. 7001(2) and 7001(9).

8.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K), and (M).

9.      Venue of the Cases and this adversary proceeding in this district is proper under 28 U.S.C. §§ 1408 and 1409.

10.      Pursuant to Fed. R. Bankr. 7008 and Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Alamo consents to the Court's entry of a final judgment or order with respect to the adversary proceeding if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**Nature of Action**

11.      This is an action pursuant to Fed. R. Bankr. 7001(2) and 7001(9) and the Declaratory Judgment Act (28 U.S.C. § 2201).

12.     By this Complaint, Alamo seeks a judgment of this Court determining the validity, perfection, and enforceability of Alamo's statutory mineral interest liens, as well as the relative priority of Alamo's statutory mineral interest liens and the prepetition and post-petition liens vis-a-vie security interests of the Prepetition Secured Parties. Specifically, Alamo seeks a determination that (i) Alamo holds valid, fully-perfected, and enforceable statutory mineral liens on certain of the Debtor Defendants' property, and (ii) such valid, fully-perfected, and enforceable statutory mineral liens are senior in priority to the prepetition and post-petition lien claims of the Prepetition Secured Parties on certain of the Debtor Defendants' properties.

### Procedural Background

13.     On November 8, 2019 (the "Petition Date"), the Debtor Defendants initiated their Cases by filing their voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

14.     MDC Reeves owns certain mineral interests in Reeves County, Texas and, upon information and belief, MDC Texas Operator operates producing gas wells in connection with those mineral interests. *See Schedules of Assets and Liabilities for MDC Reeves Energy LLC* [Case No. 19-12388, D.I. 6]. On information and belief, MDC Energy acts or acted as agent for all of its affiliates and subsidiaries, including, but not limited to, MDC Reeves and MDC Texas Operator.[2]

15.     On the Petition Date, the Debtors filed the *Motion for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral (II) Providing Adequate Protection to the Secured Lender; (III) Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 507; and (IV) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) and*

---

[2] Alamo timely amended its statutory lien filings against all Defendant Debtors on November 12, 2019.

*Local Rule 4001-2* [D.I. 49] (the "Cash Collateral Motion") seeking, among other things, authorization to use cash collateral and provide adequate protection and other forms of relief to certain prepetition secured parties.

- On November 19, 2019, the Court entered the first interim order [D.I. 112] (the "First Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion for December 13, 2019.

- On December 17, 2019, the Court entered the second interim order [D.I. 297] (the "Second Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion for January 15, 2020, which hearing was subsequently adjourned to January 17, 2020.

- On January 17, 2020, the Court entered the third interim order [D.I. 506] (the "Third Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion for February 4, 2020.

- On February 4, 2020, the Court entered the fourth interim order [D.I. 554] (the "Fourth Interim Order") approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion for February 24, 2020.

- On February 27, 2020, the Court entered the Fifth Interim Order approving the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion for March 31, 2020.

- On April 2, 2020, the Court entered the Sixth Interim Order [D.I. 874] (the "Sixth Interim Order") approving, in part, the Cash Collateral Motion on an interim basis and setting a further hearing on the Cash Collateral Motion for May 4, 2020.

- In May 5, 2020, the Court entered the Stipulation Authorizing Extension of Interim

Cash Collateral Order and Adjourning Matters Scheduled to be Heard at May 4, 2020

Hearing Until a Later Date (D.I. 874] (the "Stipulation Extending the Sixth Interim

Order").

- On May 15, 2020, the Court entered the Final Order Under Bankruptcy Code Sections 105(a), 361, 362, 363, 503, and 507, Bankruptcy Rules 4001 and 9014 (I) Authorizing Debtors to Use Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying Automatic Stay; and (IV) Granting Related Relief [D.I. 1092] (the "Final Cash Collateral Order") (together the Sixth Interim Order along with the First Interim Order, the Second Interim Order, the Third Interim Order, the Fourth Interim Order, the Fifth Interim Order, the stipulation Extending the Sixth Interim Order, and the Final Cash Collateral Order and any further interim or final order on the Cash Collateral Motion, as the "Cash Collateral Order").

16.    On June 2, 2020, the Court entered the Order Establishing Procedures to Determine the Validity, Priority, and Extent of Liens Asserted by Statutory Lien Claimants [D.I, 1150] ("Liens Procedures Order").  Pursuant to the Liens Procedures Order, Alamo's Complaint and this adversary proceeding are subject to the procedures in the Liens Procedure Order and Alamo is authorized to amend its complaint, as desired, within thirty (30) days of the entry of the Order. Alamo's Amended Complaint is timely filed.[3]

### Factual Background

### A.    Alamo Provided Service and Materials to Debtors in 2017

---

[3]  Alamo's adversary proceeding was filed prior to the entry of the Liens Procedures Order.  Defendant Natixis filed its answer and counterclaim to Alamo's original complaint on May 29, 2020.  Alamo and Natixis, through their respective counsel, reached an agreement that the Liens Procedures Order would determine the date by which Alamo would file its answer to Natixis' counterclaim, and further agreed that Alamo did not have to file an answer to Natixis' counterclaim as required under the Code until required under the Liens Procedures Order.

17.     As detailed in its *Notices of Perfection of Mineral Lien by Alamo Pressure Pumping, LLC Pursuant to 11 U.S.C. § 546(b)(2)* [D.I. 330] (the "Mineral Lien Notices"), Alamo is a company that has continuously provided hydraulic fracturing, stimulation and related completion and rework services for oil and gas exploration and producing wells and other ancillary services ("Fracking Services") to the Debtor Defendants, commencing in September 2017 and continuing through September 2019 for the Debtor Defendants' operations relating to various leases[4] located in Reeves County, Texas (the "Leases").

18. Alamo entered into a Master Services and Supply Contract ("MSA")[5] with MDC Texas Energy, LLC[6], effective August 24, 2017, that enabled Alamo to provide Fracking Services to MDC Energy, and its affiliates and subsidiaries.  The MSA covered all Fracking Services provided to Defendant Debtors and was a single contract for all Fracking Services provided to Defendant Debtors.[7]  Alamo reasonably relied on MDC Energy's statements and actions to believe that MDC Energy was the only mineral property owner and/or was acting as an agent for any entity or person within the Company Group which was the mineral property owner.  Alamo is referenced as the "Contractor" and an "independent contractor" to MDC Energy; it is not referenced in any manner

---

[4] The leases at issue concern surface rights as well as mineral rights at various depths under the surface.  There can be multiple leases covering a similar surface area and these leases grant mineral rights in different defined geologic strata located at different depths under the surface.  In this area in Texas, there can be up to 10 different formations below the surface that could potentially be subject to separate leases.  Alamo performed work on property covered by at least forty-seven (47) wells as shown on Exhibit 2.

[5] *See* Master Services and Supply Contract dated August 24, 2017 between MDC Texas Energy, LLC and Alamo Pressure Pumping, LLC ("MSA"), at 1.  A true and correct copy of the MSA is attached to this Amended Complaint as Exhibit 1.

[6] MDC Texas Energy, LLC entered into the MSA with Alamo.  Upon information and belief, Alamo contends that Defendant Debtor MDC Energy is the same entity as MDC Texas Energy, LLC, and will hereinafter refer to the contracting entity as MDC Energy.  Since the MSA incorporates the "Company Group", which includes all affiliates, subsidiaries and other entities and persons (as quoted above), there is no meaningful distinction between MDC Texas Energy and MDC Energy.  *See* MSA at § 2.1.  In the event that Debtor disputes that MDC Texas Energy is the same as MDC Energy, Alamo reserves the right to amend this complaint, pursue discovery, and present evidence that the entities are all one in the same run by the same management and have the same employees.

[7] Exhibit 1, MSA at § 3.1.  *Also see*, *id.* at §2.1 Definition of "Services."

as a subcontractor.[8]

19.    Pursuant to the MSA, Alamo provided the Fracking Services to the Debtor Defendants from September 2017 through September 22, 2019, with respect to forty seven (47) wells in twenty-six (26) Collateral Silos[9], as listed on Exhibit 2 with work beginning on September 22, 2017 and continuing until September 22, 2019.   There was no break in the Fracking Services provided by Alamo to Defendant Debtors for a six-month or longer period of time since the inception of work on September 22, 2017.  Alamo worked with Debtor Defendants on a routine and daily basis to enable Debtor Defendants to produce oil, gas, and other production by-products within and around the area covered by the Leases.

20.    The Debtor Defendants have habitually slow paid, short paid, and/or not paid Alamo and as a result, they have maintained an open and unpaid balance with Alamo since November 2017.[10]    Despite numerous promises[11] to pay Alamo's balance in full, Debtor Defendants accrued a debt to Alamo for unpaid Fracking Services of at least $19,710,370.64 as of the Petition Date, exclusive of accrued interests, costs, fees, and other charges, with additional amounts owed and accrued after the Petition Date.[12]   At no time since November 2017 have Debtor Defendants paid their account receivables in full.

---

[8] *See, e.g.*, MSA, §§ 2.2, 3.1, 3.5, 6.1.

[9] Alamo is using the "Collateral Silos" as presented by Ankura in its lien analysis spreadsheet.  By using this reference, Alamo is reserving its rights to dispute Ankura's, Debtor Defendants', or Natixis' categorization of the Collateral Silo and reserves the right to identify wells that are part of a Unit or Pooling based on the Unit and Pooling Agreements that Defendant Debtors entered into.  To the best of Alamo's knowledge, Debtor Defendants have not produced all of the Unit and Pooling Agreements.

[10] Defendant Debtors failed to pay Alamo's invoices in full since November 2017 for work performed on the Citation 14 1H and Omaha 11 #1H wells (Citation 14 Unit and Omaha 11 Units, respectively).  For all wells and units listed on Exhibit 2 starting in November 2017, Defendant Debtors have only paid partially or not paid at all on said invoices, leaving debts owed to Alamo since November 2017.

[11] Alamo continued to work for Defendant Debtors, despite not being paid in full, based in part on continued promises by MDC Energy that: (a) MDC Energy had hedged production so that even in a down or depressed market, MDC Energy would have sufficient production dollars to pay vendors, including Alamo; and (b) there were funding obligations from lenders in amounts sufficient to pay the full balance due and owing to Alamo.

[12] Alamo timely filed its Proof of Claims as required by the Court against the Debtor Defendants in the amount of $20,510,361.84, which includes interest ($769,991) and attorneys' fees (approximated in the POC at $30,000).  Alamo

21.    Under applicable state law,[13] Alamo has prepetition statutory mineral liens (the "Mineral Liens") which it secured on each Leasehold, Units and Land identified in Exhibit 3 attached hereto and incorporated herein, to secure unpaid amounts for labor and services that Alamo continually provided to the Debtor Defendants under the MSA beginning in September 2017.[14]

22.    Alamo's Mineral Liens attach to and encumber the following property interests of Debtor Defendants (collectively, the "Collateral Properties"): (i) the material, machinery and supplies furnished by Alamo; (ii) the land, leasehold, oil or gas well, water well, oil or gas pipeline and its right-of-way, and lease for oil and gas purposes for which the services were provided; (iii) the buildings and appurtenances on the property; (iv) other material, machinery, and supplies used for mineral activities and owned by the property owner; and (iv) other wells[15] and pipelines used in operations related to oil, gas and minerals and located on the property.  *See* TEX. PROP. CODE § 56.003; *Abella v. Knight Oil Tools*, 945 S.W.2d 847 (Tex. App.-Houston [1st Dist.] 1997, no writ).[16]  It is common practice to combine multiple leases to operate as a single "unit" or through pooling.[17]  The Debtor Defendants have multiple unit and/or pooling agreements that include the leases and various wells in which Debtor Defendants own their working interest.  The lease to which a statutory lien attaches covers all of the real property described by the lease, including the minerals

---

incorporates the Proof of Claim with its attachments into this amended complaint for all purposes.

[13]  *See* TEXAS PROPERTY CODE §§ 56.002, 56.021 and 56.022.

[14]  Additionally, on December 5, 2019 [D.I. 289] Alamo filed its Notice of Perfection of Mineral Lien Pursuant to 11 U.S.C. § 546(b)(2).

[15]  The term "other wells" also covers any and all saltwater disposal wells on any of the Collateral Properties or that were constructed in connection and related to Debtor Defendants operations.

[16]  The law of the state of Texas is applicable in this context as the Leases in question, and the provision of Fracking Services by Alamo relate to real and personal property of the Debtor Defendants that is located in Texas.  *See, e.g., Baker Hughes Oilfield Operations, Inc. v. Union Bank of Cal., NA (In re Cornerstone E&P Co., LP)*, 435 B.R. 390, 399 (Bankr. N.D. Tex. 2010) (analyzing Texas and Oklahoma law to determine the competing priority of security interests of real property located in Texas and Oklahoma; *compare In re SemCrude L.P.*, 864 F.3d 280 (3d Cir. 2017) (applying Delaware state UCC law to determine perfection issues relating to security interests in personal property).

[17]  *See* ¶ 28 *infra* for complete explanation of use of unitization and pooling.

in the ground and, when a lease covers a tract made part of a unit or pooled area, the lien that is attached to that lease likewise attaches to all other leases that are subject to the common unit agreement or pooling agreement. This includes the minerals in the ground covered by the leases in the unit or pooled acreage. TEX. PROP. CODE § 56.003; *Texcalco, Inc. v.* McMillan, 524 S.W.2d 405, 407 (Tex. Civ. App—Eastland 1975, no writ); *Dunigan Tool & Supply Co. v.* Burris, 427 S.W.2d 341, 344 (Tex. Civ. App.—Eastland 1968, writ ref'd n.r.e.).

**B.    Prepetition Secured Parties in 2018**

23.    Almost one year after Alamo began providing Fracking Services to Defendant Debtors and during which time Defendant Debtors owed significant monies to Alamo for such services, on September 17, 2018, prior to the Cases and as set forth in the Cash Collateral Motion, the Prepetition Secured Parties made certain loans and extensions of credit under the Credit Agreement to Defendant Debtors.  In connection with the Cash Collateral Motion, the Prepetition Secured Parties have asserted that, under the Credit Agreement and certain other documentation executed therewith (collectively, the "Credit Documents"), Defendant Debtors and certain affiliated guarantors granted senior security interests in, and continuing, valid, binding, enforceable and perfected first priority liens, on any interest in any kind of property or asset, whether real, personal or mixed, tangible or intangible, including cash, securities, accounts and contract rights owned by Defendant Debtors and the certain affiliated guarantors.  The Prepetition Secured Parties assertions include a first- priority security interest in oil and gas leasehold interests, working interests, and associated property rights.

24.    According to the relevant land records of Reeves County, the security instruments for the Credit Documents were not filed against the Debtor Defendants' real property interests in that county—and thus the security interests of the Prepetition Secured Parties were not perfected

as to such collateral—until September 25, 2018.

25.     Pursuant to the Cash Collateral Order, the Debtors (including the Debtor Defendants) have admitted and stipulated to the Prepetition Secured Parties' claim and security interests.  *See* Cash Collateral Order (C), (D), (E), (F).  Under paragraph 23 of the Cash Collateral Order, these admissions and stipulations are generally binding on all other parties in interest subject to a challenge period as set forth therein.   Paragraph 23 of the Cash Collateral Order expressly provides, however, that certain "Statutory Lienholders" such as Alamo are not subject to this challenge period in order to preserve or protect the ***priority*** of their respective statutory liens or security interests, and further that "[n]othing in [the Cash Collateral Order] shall modify the priority of any valid, perfected and non-avoidable statutory lien in existence on the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code." (emphasis added)  Alamo asserts that there is a justiciable controversy as set forth in this Complaint as to the competing priority of its statutory mineral liens with the prepetition and post-petition liens of the Prepetition Secured Parties.

26.     Furthermore, pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), the Debtors granted to the Prepetition Secured Parties certain adequate protection liens effective as of the Petition Date on all of the Debtors' assets as well as certain adequate protection liens on specific assets of the Debtors for capital expenditures.  *See* Cash Collateral Order ¶¶ 4(a) and 4(b).  The post-petition adequate protection liens granted to the Prepetition Secured Parties are (i) made expressly subordinate to "Permitted Prior Liens" (as defined therein) and (ii) provided the same relative priority with post-petition replacement liens granted to "Statutory Lienholders" (as defined therein) as the underlying prepetition liens of the parties as of the Petition Date. Furthermore, paragraphs 4(a) and 4(b) of the Cash Collateral Order do not provide priming liens

to the Prepetition Secured Parties.  Both paragraphs expressly provide that the priority of such adequate protection liens "shall be the same as the relative priorities of the underlying liens as they existed as of the Petition Date or as perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code."  *Id.*

**C.    Alamo has a Priority Lien Ahead of Prepetition Secured Parties**

27.    Alamo disputes the Prepetition Secured Parties' prepetition and post-petition security interests insofar as such security interests are asserted to be superior to the valid, fully perfected, and enforceable statutory mineral liens of Alamo as further described herein.

28.    Under Texas law, the Mineral Liens encumber the following interests in the Collateral Properties: (i) the interest of the contracting party and the interest of any mineral property owner on whose behalf the contracting party contracted, (ii) the interest of identified working interest owners with a recorded assignment as of the applicable mineral lien inception date; and (iii) the interest of any working interest owner without a recorded assignment as of the applicable mineral lien inception date. *See Bandera Drilling Co. v. Lavina*, 824 S.W.2d 782 (Tex. App.-Eastland 1992, no writ); *Trevor Rees-Jones, Trustee for Atkins Petroleum Corp. v. Trevor Rees-Jones, Trustee for Apache Services, Inc.*, 799 S.W.2d 463 (Tex. App.-El Paso 1990, writ denied); *McCarty v. Halliburton Company*, 725 S.W.2d 817 (Tex. App. -Eastland 1987, writ ref'd. n.r.e.).  Moreover, the mineral lien statutes are generally considered remedial in nature and, consequently, should be given a broad construction to afford security and protection to laborers and materialmen under Chapter 56. *Dealers Elec. Supply Co. v. Scoggins Constr. Co.*, 292 S.W.3d 650, 658 (Tex. 2008); *Hayek v. Western Steel Co.*, 478 S.W.2d 786, 795 (Tex. 1972).

29.    Once secured by filing a lien affidavit and perfected, the inception date of Alamo's Mineral Liens on the Collateral Properties relates back to the commencement of the furnishing of

labor and/or materials on the subject Leases, which in this instance is September 22, 2017.  *See* TEX. PROP. CODE § 56.004-005; *Youngstown Sheet & Tube Co. v. Lucey Products Co.*, 403 F.2d 135, 143 (5th Cir. 1968); *In re Meg Petroleum Corp.*, 61 B.R. 14, 20 (Bankr. N.D. Tex. 1986) ("[T]he Court finds that for purposes of Texas law the mechanic's and materialmen's lien filed by a mineral contractor automatically [sic] relates back to the date that it first furnishes materials and services to the oil and gas lease so long as the contractor files a lien affidavit in the proper county clerk's office within six months of concluding its activities on the tract."); *Bandera Drilling Co. v. Lavina*, 824 S.W.2d 782, 784 (Tex. App.-Eastland 1992, no writ); *Trevor Rees-Jones, Trustee for Atkins Petroleum Corp. v. Trevor Rees-Jones, Trustee for Apache Services, Inc.*, 799 S.W.2d 463 (Tex. App.-El Paso 1990, writ denied).  As stated by the United States Bankruptcy Court for the Northern District of Texas, Texas law provides that

> the inception date of a mineral contractor lien relates back to the date work was first performed or materials first supplied, but the lien does not affect an encumbrance that attached to land or a leasehold before the lien's inception.   Thus, under the 'first in time' rules under Texas . . . , [a lender] will only take first priority over a valid [mineral lienholder] on a particular oil and gas lease where [such lender] perfected its lien prior to the date that the [mineral lienholder] first provided labor or materials attributable to that lease.

*Baker Hughes Oilfield Operations, Inc. v. Union Bank of Cal., NA (In re Cornerstone E&P Co., LP)*, 435 B.R. 390, 399 (Bankr. N.D. Tex. 2010).

30.     Alamo first provided Fracking Services to the Debtor Defendants in connection with the applicable Leases pursuant to the MSA and continuously provided Fracking Services with respect to such Leases.  The Mineral Liens of Alamo therefore date back to the applicable dates of when Alamo first Fracking Services to the Debtor Defendants commenced on September 22, 2017 under the MSA.[18]  Further, Alamo continuously provided Fracking Services on numerous

---

[18] When Natixis loaned funds to Defendant Debtors in September 2018, Defendant MDC Energy  advised that Alamo would be paid in full because Defendant Natixis had committed to a $300 million facility.  However, because

wells on various units and pooled acreage while Alamo remained unpaid, until the filing of the

Debtors' petition, after which Alamo properly and timely perfected its liens relating back to

September 22, 2017.  The Prepetition Secured Parties did not obtain and perfect their liens until

September 25, 2018.

  31. Under applicable Texas law, an operator can combine multiple leases together

through (a) pooling or (b) unitization.  Pooling is used to aggregate separately owned mineral or

leasehold interests to obtain encompass sufficient acreage to drill one well, *e.g.,* a 640 acre tract is

required by the Railroad Commission of Texas to have the required well spacing to avoid waste.[19]

Unitization, on the other hand, refers to the aggregation of separately owned mineral or leasehold

interests covering all, or part of, a common source of supply (*e.g.,* a field or reservoir) for the

principal purpose of the joint operation of that field/reservoir (in whole or in part) in order to

maximize production, create operational efficiencies and conserve financial and natural resources.

In both instances, the aggregation is accomplished by an agreement – a pooling agreement or a

unit agreement – executed with the mineral lessors.   When a unit or pooled acreage is created,

mineral liens attach to any lease included in the unitized or pooled acreage and encumber the

totality of the property unitized or pooled and thus the liens attach to each and every lease included

(in whole or in part) and covered by the applicable agreement.  *See* TEX. PROP. CODE § 56.003;

*Texcalco, Inc. v. McMillan*, 524 S.W.2d 405, 407 (Tex. Civ. App.-Eastland 1975, no writ);

*Dunigan Tool & Supply Co. v. Burris*, 427 S.W.2d 341, 343 (Tex. Civ. App.-Eastland 1968, writ

ref'd n.r.e.).  Upon information and belief, certain of the Leases are unitized or pooled, subject

to unit and/or pooling agreements and operated as either pooling or a unit and, therefore, the

---

Defendant Natixis did not fund the loan in full, Alamo was never paid the full balance.

[19] The term "communization" is also used as the functional equivalent of "pooling", but the term is used principally in the context of federal oil and gas leases.

Mineral Liens of Alamo extend to and encumber all collateral property covered by each lease in each such pooling or unit agreement.  Moreover, the liens attached to the pooling or unit relate back to the commencement of when the Fracking Services were initially provided – September 22, 2017.

32.    Pursuant to and in compliance with Bankruptcy Code section 546(b)(2), Alamo provided notice to preserve, perfect, maintain, and continue its rights  as  a  perfected  lienholder in certain property interests of the Debtor Defendants under Chapter 56 of the Texas Property Code and Alamo's claimed Texas constitutional lien on such Property under Article 16, Section 37 of the Texas Constitution.[20] The Mineral Lien Notices constituted the legal equivalent of having recorded a mineral lien in the public records for the county where the Collateral Properties are located and the equivalent of then having commenced a suit to foreclosure the lien in the proper court.

33.    In addition to filing its Mineral Lien Notices in the pending bankruptcy proceeding, Alamo has properly filed Lien Affidavits and Claim Notices in each applicable county against MDC entities, including MDC Energy, MDC Reeves, and MDC Texas Operator asserting its rights under the Texas Property Code and the Texas Constitution, in each case within the statutory time limits to create a valid mineral lien.[21]

**Justiciable Controversy**

34.    The Prepetition Secured Parties assert that they have valid, perfected, enforceable, first-priority liens and security interests upon all of the Debtor Defendants' assets, which include

---

[20] The Texas Constitution, Article 16, Section 37 establishes that "[m]echanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens."

[21] Alamo incorporates by reference its Proof of Claim and all attachments, including the Lien Affidavits properly and timely filed as required by the Texas Property Code.

the Collateral Properties, dating from their September 2018 Credit Documents and the Cash Collateral Order.[22] Alamo disputes that the Prepetition Secured Parties have first priority liens upon the Collateral Properties, including the Debtor Defendants' interests in oil and gas leases and/or working interests, because Alamo's Mineral Liens relate back to the commencement of its furnishing of Fracking Services in 2017 on the subject Leases, while the alleged perfection of the security interests of the Prepetition Secured Creditors did not occur until September 25, 2018, almost one year later.

35.     Accordingly, Alamo seeks a declaration from the Court that Alamo's Mineral Liens are valid, perfected, enforceable and that Alamo's Mineral Liens are senior to the prepetition and post-petition lien claims of the Prepetition Secured Parties.  A declaratory judgment which declares the extent, validity, and priority of competing lien claims on the Debtor Defendants' property is authorized under Bankruptcy Rule 7001 and will adjudicate disputed issues involved in this controversy between secured creditors in this bankruptcy case.

**First Claim for Relief**
**Declaratory Judgment**

36.     Alamo incorporates by reference the allegations set forth in paragraphs 1 through 35 above as if fully set forth herein.

37.      This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Bankruptcy Rules 7001(2) and 7001(9).

38.     As set forth above, Alamo has validly and timely recorded Mineral Liens against the Collateral Properties of the Debtor Defendants. These Mineral Liens relate back to inception

---

[22] *See, e.g.*, Cash Collateral Order at footnote 4 ("The Prepetition Secured Parties assert that the oil and gas production proceeds are the Prepetition Secured Parties' Cash Collateral, the Statutory Lienholders dispute that contention, and all of the parties' rights are reserved.").

dates prior to the recording of the competing security interests of the Prepetition Secured Parties, and therefore Alamo holds a senior secured claim to the Prepetition Secured Parties.

39.    Accordingly, Alamo  respectfully requests a judgment of this Court declaring (i) that Alamo holds valid, fully-perfected, and timely recorded Mineral Liens against the Defendant Debtors' properties, and (ii) that Alamo's validly and timely recorded Mineral Liens on the applicable Collateral Properties, with inception dates pre-dating the date of filing of the security interests of the Prepetition Secured Parties, are senior secured claims to the prepetition and post-petition claims and interests of the Prepetition Secured Parties in the Collateral Properties.

## **Requested Relief**

WHEREFORE, Alamo respectfully requests an order of the Court declaring that it holds a validly perfected and fully enforceable Mineral Liens against the Collateral Properties and that such Mineral Liens on the Collateral Properties have priority over and are prior in time and superior in right to the prepetition and post-petition claims and interests of the Prepetition Secured Parties.

[Remainder of page intentionally left blank]

Dated: July 1, 2020                    */s/ Domenic E. Pacitti*
Wilmington, Delaware                   Domenic E. Pacitti (DE Bar No. 3989)
                                       Raymond H. Lemisch (DE Bar No. 4204)
                                       KLEHR HARRISON HARVEY BRANZBURG LLP
                                       919 North Market Street, Suite 1000
                                       Wilmington, Delaware 19801
                                       Telephone: (302) 426-1189
                                       Facsimile: (302) 426-9193
                                       Email:  dpacitti@klehr.com
                                               rlemisch@klehr.com

                                                        and


                                       Craig T. Enoch (Tx. Bar No. 00000026)
                                       Katherine K. Mudge (Tx. Bar No. 14617600)
                                       Marla D. Broaddus (Tx. Bar No. 24001791)
                                       Rodman C. Johnson (Tx. Bar. No. 10821550)
                                       ENOCH KEVER, PLLC
                                       5918 W. Courtyard Dr., Suite 500
                                       Austin, Texas 78730
                                       Telephone: (512) 615-1233
                                       Facsimile: (512) 615-1198
                                       Email:  cenoch@enochkever.com
                                               kmudge@enochkever.com
                                               mbroaddus@enochkever.com
                                               rjohnson@enochkever.com


                                       *Counsel to Alamo Pressure Pumping, LLC*